515 So.2d 494 (1987)
STATE of Louisiana
v.
Gerald BURGE.
No. 87 KA 0306.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
*496 William R. Campbell, Jr., New Orleans, for the State.
Julian J. Rodrigue, Covington, for Gerald Burge.
Before GROVER L. COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
Gerald Burge was indicted by the St. Tammany Parish Grand Jury for second degree murder, in violation of La.R.S. 14:30.1. He pled not guilty and, after a jury trial, was convicted as charged. He appealed, urging thirteen assignments of error, as follows:
1. The trial judge erred in refusing to grant the defendant's motion to quash under La.C.Cr.P. art. 578.
2. The trial court erred in refusing to grant defendant's motion for a mistrial when the court allowed the prosecution to introduce evidence of other crimes, which evidence should not have been admissible.
3. The trial judge erred in admitting the testimony of E.L. Hermann over defendant's objection because of its hearsay character.
4. The trial judge erred in allowing into evidence S-6, a photograph which is highly prejudicial in nature, outweighing its probative value.
5. The trial judge erred in refusing to grant a mistrial after the state, through the testimony of the assistant district attorney, attempted to show that Joe Pearson was not testifying against Gerald Burge because he was afraid of Burge.
6. The trial judge erred in overruling defense counsel's objection to the assistant district attorney testifying that Gerald Burge could have been with Joe Pearson the night of the murder.
7. The trial judge erred in allowing Wilma Davis to explain what Gerald Burge's physical reaction was to the news of Doug Frierson's death, in the telephone conversation, over defendant's objection, and in allowing the assistant district attorney to testify.
8. The trial judge erred in allowing the state to introduce into evidence a prior consistent statement of Joe Pearson to corroborate what he testified to on the witness stand.
9. The trial judge erred in refusing to allow defendant's attorney to question Lt. Thomas about a statement made by defendant which the state allegedly lost.
10. The trial judge erred in refusing to allow defendant's attorney to question Gilbert Ray Robinson about a conversation he had with Glenda Frierson, sister of the deceased, in which she attempted to get Robinson to change his testimony.
11. The trial judge erred in not granting a mistrial on his own motion because of the highly inflammatory and prejudicial remark of the district attorney in his closing argument.
12. The trial court erred in refusing to grant defendant's motion for a new trial based on all of the assignments of error previously noted herein and because the verdict is contrary to the law and the evidence and to allow the jury's verdict to stand would result in a grave injustice to the defendant and further because the verdict is contrary to the jurisprudence of the State of Louisiana.
13. The trial judge erred in refusing to grant defendant's motion for post-verdict *497 judgment of acquittal since this is a circumstantial evidence case and, assuming every fact to be proved that the evidence tends to prove, any rational trier of fact would not have found the essential elements of the crime proven beyond a reasonable doubt.
Defendant was indicted for the murder of Douglas Frierson. Although both defendant and the victim were residents of the State of Mississippi, the murder occurred on the Louisiana side of the Pearl River. The victim and defendant had been friends for several years; the state alleged that they had been involved in criminal activity together in Mississippi. Defendant had repeatedly threatened to kill anyone who might testify against him.
The murder occurred on October 17, 1980. The victim's body was found under the East Pearl River Bridge near the town of Pearl River, Louisiana, at approximately 4:00 a.m. He had been shot four times with a .44 caliber weapon.
The victim was last seen alive in the company of defendant and defendant's friend, Joe Pearson, between midnight and 4:00 a.m. His body was found by an officer during a routine patrol.
The victim's sister, Glenda Hale, was advised by Mississippi authorities that her brother had been shot in Louisiana. At the time of this notification (approximately 6:30 a.m.), the officer who made the call was not aware of the victim's condition and was unable to tell her any of the details of the shooting. Subsequently, Mrs. Hale contacted defendant, whom she knew to be acquainted with various Louisiana law enforcement officers, and asked him to come to her grandfather's house and call someone to find out her brother's condition. Defendant complied; after a short conversation with Det. E.L. Hermann, he reported to the family that the victim had died after being shot four times with a .44 caliber gun under the East Pearl River Bridge. At the time of this conversation, however, the number of wounds and caliber of the weapon had not been determined. A transcript of the conversation, written by another officer listening to the conversation at Hermann's request, reveals that the details of the offense were not discussed at that time.
Defendant was arrested for the murder approximately one week later and was released on bond some time thereafter. The original second degree murder indictment was returned three years later, charging defendant and Joe Pearson with the murder of Doug Frierson. Thereafter, Pearson pled guilty to a reduced charge of accessory after the fact in return for his testimony against defendant. Pearson completed his sentence one week before defendant's trial.
In April, 1986, a second indictment was returned, charging defendant alone with second degree murder. Defendant was tried and convicted under this indictment.

ASSIGNMENT OF ERROR NUMBER ONE
By assignment of error number one, defendant submits that the trial court erred by denying his motion to quash the indictment based on the expiration of the time limits for prosecution. He claims that the two year time limits provided by La.C.Cr.P. art. 578 began December 8, 1983, when the first indictment was returned; and, despite the suspension of the time limits caused by defendant's filing of several preliminary motions, the prescriptive period had passed by September 15, 1986, the date trial began.
On April 5, 1984, defendant filed a general motion to suppress all evidence obtained in this case, claiming the seizure thereof was illegal as the result of an unconstitutional search and seizure. Thereafter, a hearing was conducted on May 7, 1984, at which the state denied knowledge of any physical evidence seized from defendant. This answer was later qualified to include one box of .44 caliber hollow point bullets, given by defendant's former girlfriend to an officer who was no longer with the sheriff's office. The following exchange then occurred:
BY DEFENSE COUNSEL: That only leaves the Motion to Suppress the Evidence, Your Honor. And they say they *498 have no evidence, so I guess we have nothing to suppress.
BY THE COURT: That makes that motion moot.
BY THE STATE: Your Honor, I would ask that that matter be continued. We have to come back to court for the 31st. If Mr. Tanner and I can get together between now and then and view any physical evidence we have, and then we can have some specificity of any evidence that we have to suppress.
BY DEFENSE COUNSEL: Are you asking for a motion for continuance on the evidence?
BY THE STATE: I feel it would be better to hold it open until the 31st. And if we do locate some evidence, then we'll have it.
BY THE COURT: I suggest that you get a list of evidence that you intend to use and show it to Mr. Tanner and let him be given the opportunity to try and suppress it if indeed it is suppressible. If somebody found it out in the middle of the street or whatever, you're going to have to say where it came from. We'll leave that motion open until the next motion day. You're going to have to furnish the man with a list of evidence you intend to use in this trial. Apparently it's getting close to time to find that out.
Thereafter, minute entries indicate that the hearing was continued on June 6, 1984; August 22, 1984; October 3, 1984; and November 7, 1984. No further action was taken before the second indictment was returned December 8, 1985. On June 3, 1986, on motion by defendant, the court ordered that all of the pleadings filed under the previous indictment be adopted and applied to the instant case. The hearing on the motion to suppress was again continued on defendant's motion on August 19, 1986; the motion was subsequently withdrawn by defendant on September 8, 1986.
The first indictment was not dismissed until September 15, 1986, the day of trial. On that date, defendant moved to quash the first indictment on the grounds that more than two years had passed since the institution of prosecution. After a hearing, the court denied the motion to quash and the trial proceeded.
Defendant contends the prescriptive period began December 8, 1983. He admits that the time limits were suspended during the pendency of various preliminary pleas (including the motion to suppress) as provided by La.C.Cr.P. art. 580. He argues, however, that the suspension ended with the hearing on July 5, 1984, quoted extensively above, at which he claims that he abandoned the motion to suppress.
Initially, we note that defendant's motion to quash was directed only to the indictment returned December 8, 1983. Although defendant argues that the trial was untimely, he did not challenge the indictment under which he was actually prosecuted; the indictment he sought to quash was dismissed on the same date his motion was filed. Thus, defendant, in effect, has obtained the only relief for which he asked.
Moreover, defendant's argument that the trial was untimely is without merit. He claims that his abandonment of the motion to suppress was evidenced by his failure to comply with the court's order which required him to amend his motion to suppress to specifically state what evidence he wanted to suppress. However, the record does not reflect that the court issued such an order.[1] On October 3, 1984, the court conducted a hearing at which Mr. Schwartz (the assistant district attorney) and Mr. Tanner (defense counsel) both appeared. The following exchange took place:
BY MR. SCHWARTZ: On the first page, 116571, State of Louisiana versus Gerald Burge. The docket shows there's two matters to come before the court today. The first matter, the motion for discovery, has been satisfied previously. The motion to suppress the evidence, I've talked with Mr. Tanner and we've discussed, I've told him I do not know which *499 evidence he wishes to suppress. And he has advised he will amend his motion to state specifically what he is trying to have suppressed, and we would ask that that matter be continued.
BY THE COURT: When will be an appropriate time to continue it to?
BY MR. SCHWARTZ: Your Honor, we ask it be continued until November 7th.
BY THE COURT: So ordered.
Thus, defendant was not ordered to either amend or withdraw his motion; his claim that the abandonment of the motion was evidenced by his failure to comply with this order is without merit.
Finally, we note that, although the minute entry reflects that neither defendant nor his attorney were present in court on November 7, 1984, the fact that defendant had not amended his motion by that date cannot be construed as an abandonment of the motion in light of his subsequent actions. The record reflects that on August 19, 1986, defendant moved to continue a hearing on this motion and specifically withdrew the motion on September 8, 1986. These actions are totally inconsistent with defendant's claim that he abandoned the motion on November 7, 1984.
We conclude, therefore, that the trial court correctly found that defendant's motion to suppress suspended the prescriptive period between April 5, 1984, and September 8, 1986; thus, the motion to quash was properly denied. Thereafter, the State had one year to bring this matter to trial. See La.C.Cr.P. art. 580.

ASSIGNMENT OF ERROR NUMBER TWO
By assignment of error number two, defendant submits that the trial court erred by allowing the state to introduce evidence of other crimes. He claims the evidence, consisting of threats made by defendant, was not admissible under State v. Prieur, 277 So.2d 126 (La.1973), because it was not relevant to the proceeding.
The state alleged that defendant and the victim were jointly involved in the theft of several items of heavy equipment and machinery in Mississippi. The state intended to show defendant's motive and intent to commit the instant offense by offering evidence of these other crimes, coupled with the testimony of other witnesses who would testify that defendant repeatedly threatened to kill anyone who testified against him.
A Prieur hearing was conducted to determine the admissibility of evidence of the Mississippi crimes, including copies of two grand jury indictments from Pearl River County, Mississippi, charging defendant with receiving stolen property, and an order of conviction from the Circuit Court, attesting that defendant had been convicted as charged under the first indictment. The state also presented the testimony of Glenda Hale, the victim's sister, who related that the victim had decided to plead guilty and testify about defendant's participation. Mrs. Hale further testified that defendant threatened to kill her brother because "he talked too much."
At the conclusion of the hearing, the court ruled that the state would not be permitted to introduce the indictment and conviction certificate because it had not proven by clear and convincing evidence that defendant had committed the other offenses. The court further ruled, however, that the state could introduce evidence of other prior ill feelings between the accused and the deceased and that any such threats need not be directed against the victim.
Defendant contends that evidence of the threats was not admissible because the fact that defendant made a threat "against the world" does not prove a motive factually peculiar to the victim in the charged crime; thus, he claims, evidence of these general threats is not relevant to prove the motive for the murder. We note, however, that Mrs. Hale testified at the Prieur hearing that defendant specifically threatened to kill her brother because of his connection with the Mississippi criminal activity.
In any event, Mrs. Hale's testimony that defendant threatened to kill anyone who testified against him, as well as the testimony of Andrew Bennette to the same *500 effect, was clearly admissible. Testimony regarding previous threats is admissible as declarations of the accused tending to establish motive or intent. La.R.S. 15:446; State v. Qualls, 353 So.2d 978 (La.1977). See also State v. Baldwin, 388 So.2d 664 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981). The general nature of defendant's threats does not render the evidence irrelevant or inadmissible for any reason. See State v. Zeno, 322 So.2d 136 (La.1975); State v. Rocco, 222 La. 177, 62 So.2d 265 (La.1952). This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER THREE
By assignment of error number three, defendant submits that the trial court erred by permitting the state to introduce hearsay evidence. Defendant claims testimony by Det. E.L. Hermann about the content of defendant's telephone call to him was not admissible because Hermann refreshed his memory from notes taken by Lt. Clark Thomas, who did not participate in the conversation but was instructed by Hermann (without defendant's knowledge) to listen and take notes of it. He argues, therefore, that the evidence presented by Hermann was actually the hearsay testimony of Lt. Thomas.
La.R.S. 15:279 provides that, for the purpose of refreshing his present memory, a witness may examine memoranda; it is immaterial by whom or when the memoranda were made, provided that the witness can testify to the fact after such inspection. Hermann testified that he inspected Thomas' written report, made during the telephone call, and that it was accurate. He further testified he had compared the handwritten and typed copies, and found them in agreement. The record indicates that Hermann recounted virtually all of the conversation without reliance in court upon either the typed or written transcript. Therefore, it is clear that although Det. Hermann's memory was refreshed, he testified from his own recollection. Moreover, we note that Lt. Thomas also testified and corroborated Hermann's testimony. He also identified both the handwritten and typed accounts, which were introduced into the record. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error, defendant submits that the trial court erred by permitting the state to introduce a photograph of the victim into evidence. He argues the photograph is gruesome, and any probative value is outweighed by its prejudicial effect.
The admission of gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Williams, 486 So.2d 889 (La.App. 1st Cir.), writ denied, 489 So.2d 915 (La. 1986). Post mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death and to provide positive identification of the victim. State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir.), writ denied, 460 So.2d 604 (La.1984).
The photograph in question depicts the head and upper torso of Douglas Frierson. A substantial quantity of blood is visible on the victim's head and the pavement underneath it. The photograph was offered for identification purposes after it was shown to the victim's mother and identified by her. We find, therefore, that the trial court did not err in permitting the photograph to be introduced.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment of error, defendant submits that the trial court erred by denying his motion for a mistrial. Defendant claims he was entitled to a mistrial after a state witness was permitted to testify that he was afraid of defendant. Defendant submits that he was prejudiced by the implication *501 that the witness refused to testify against defendant out of fear.
The state originally jointly indicted defendant and Joe Pearson for the murder of Doug Frierson. Pearson was allowed to plead guilty to accessory after the fact of second degree murder in return for his testimony against defendant. At trial, however, Pearson testified only that he did not kill Doug Frierson; he professed to be unable to remember anything else about the night of the murder or a statement he later gave to the police in which he implicated defendant. Although Pearson was permitted to review a transcript of this statement, he continued to claim that he was unable to remember anything about the statement or the murder. The state then asked if he were afraid of defendant. Over defendant's objection, Pearson was permitted to respond and testified that he was. Defendant claims this statement was inadmissible because it "had nothing to do with" the rest of Pearson's testimony.
Initially, we note that defendant's brief argues only that the testimony was objectionable because it was not relevant. At trial, defendant did not set forth a specific legal ground for his objection to the response. Since defendant has neither alleged nor substantiated prejudice and the remark is not one to which the mandatory mistrial provisions apply, defendant's motion for a mistrial was not well-founded.
Moreover, defendant's contention that the information is not relevant is without merit. Bias, interest or corruption of a witness is a relevant fact. Bias or interest may be shown either by direct evidence or by facts tending to show such. See La.R.S. 15:492. Defendant claims that Pearson's statement that he was afraid of defendant was inadmissible. We disagree. The statement was relevant as a fact evidencing Pearson's interest, self-preservation, as a reason for his refusal to give testimony. As such it related to the entirety of Pearson's testimony or rather non-testimony.

ASSIGNMENT OF ERROR NUMBER SIX
By this assignment of error, defendant submits the trial court erred by overruling his objection to testimony by the assistant district attorney to the effect that Gerald Burge could have been with Joe Pearson the night of the murder. Defendant's argument is based on the following exchange, which occurred during the redirect examination of Joe Pearson by the state:
Q Could [defendant] have been with you on October 17, 1980?
A I don't recall.
Q So he could have been with you?
BY DEFENSE COUNSEL: Objection as to what could have been. The witness has answered the question, Your Honor.
BY THE COURT: Overruled.
Q Could he have been with you on October 17, 1980?
A Anybody could have.
As previously noted, on direct examination Joe Pearson testified that he had not killed Doug Frierson but claimed that he did not remember anything else about the date of the murder. Defendant claims, therefore, that the question constituted testimony by the state since, as the state's witness, Pearson could not be asked leading questions on redirect.
Defendant's argument is totally without merit. While the first question quoted above might have been objectionable as a leading question, it does not constitute testimony by the prosecutor. Moreover, the question actually answered by defendant was properly phrased.
The state's case was obviously hindered by Pearson's apparent refusal to testify despite the plea bargain he entered to testify against defendant in return for a substantially reduced plea. Moreover, since Pearson had completed the term imposed for his plea to accessory after the fact, the state had no leverage to encourage his compliance with the bargain. However, despite the state's obvious frustration at Pearson's disclaimer of knowledge, it is apparent that the state merely attempted to obtain some type of response from him. We note, as well, that, in light of Pearson's evasive answers, the state could have *502 asked that he be declared a hostile witness and interrogated accordingly. See State v. Bradford, 367 So.2d 745 (La.1978). Therefore, we find no error in the court's ruling permitting the state to inquire if Pearson could have been with defendant on the date of the murder.

ASSIGNMENT OF ERROR NUMBER SEVEN
By this assignment of error, defendant submits that the trial court erred by permitting Wilma Davis, defendant's wife, to testify about defendant's reaction when she told him about Frierson's death. He argues that Ms. Davis should not have been allowed to testify about defendant's reaction because she imparted the news to him during a telephone conversation from which, he claims, it is impossible to determine another person's physical or mental condition.
Initially, we note that there is no basis for defendant's claim that a party to a telephone conversation is incapable of judging the mental or physical condition of another party to the conversation. Various voice qualities, such as timbre, inflection and tone, can supply a basis for other parties to infer certain conditions.
Moreover, the record does not support defendant's allegation that Ms. Davis related her opinion of defendant's condition during their telephone conversation; rather, she related her assessment of defendant's physical and mental condition after Frierson's death. Defendant's objection is based on the following testimony:
EXAMINATION BY THE STATE:
Q When you told Gerald Burge that Doug Frierson had been killed, how did he act?
BY DEFENSE COUNSEL: Objection.
BY THE COURT: What's your objection, sir?
BY DEFENSE COUNSEL: I think it calls for a hearsay answer. It could call for a hearsay answer.
BY THE COURT: You answer the question itself, ma'am, not what you care to say. In other words, defense counsel asked that you do not answer with hearsay.
BY THE STATE:
Q My question is how he acted when you told him.
A He told me that he
BY DEFENSE COUNSEL: Objection.
BY THE COURT: Don't tell us what he told you. The question is, how did he act.
A Well, it was on the telephone.
EXAMINATION BY THE STATE:
Q Could you tell that he was nervous and upset?
A No.
Q Did you ever give a statement on November 21, 1983, to Detective Mike Moore of the St. Tammany Parish Sheriff's Office in which you stated that answer differently?
A You asked about the phone call.
Q Okay, why don't you clear it up for me.
BY DEFENSE COUNSEL: Your Honor, I don't see how the witness can respond to that question. Clear up what?
BY THE COURT: You gentlemen approach the bench, please.
(DISCUSSION WAS HELD AT THE BENCH.)
BY THE COURT: If there's an objection, it's overruled. The witness will be allowed to explain.
EXAMINATION BY THE STATE:
Q Am I asking you about two different times, Ms. Davis?
A You're asking me about the phone call. Mike Moore asked me how his how he acted afterwards.
Q Yes. How did he act?
A Well, he was, I guess, nervous or whatever.
Q Nervous?
A Upset.
Q His friend gets killed and he's nervous, is that what you're saying?
A Or upset.
Q Did you say nervous?
A Yes.
BY THE STATE: No further questions.
*503 It appears, therefore, that Ms. Davis specifically testified that she was unable to gauge defendant's condition over the telephone; afterwards, however, he appeared nervous and upset. Defendant's conclusion that she referred to the telephone conversation was simply an erroneous assumption. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
By assignment of error number eight, defendant submits that the trial court erred by permitting the state to introduce a prior consistent statement by Joe Pearson. He submits that the statement was inadmissible because the state failed to provide a proper foundation for its admission.
On direct examination, Pearson testified that he was afraid of defendant. Thereafter, defendant offered the testimony of four witnesses who claimed to have seen Pearson in defendant's company since Frierson's murder. These witnesses, Carl and Kerry Burge (defendant's brothers), Sharon Burge (Kerry Burge's wife), and Claude Ferr (defendant's roommate), each testified that Pearson did not appear to be frightened of defendant while in his company.
In rebuttal, the state sought to introduce a statement by Pearson in which he claimed that he was afraid of defendant and that defendant had previously threatened him. In this same statement, Pearson apparently implicated defendant in the murder of Doug Frierson. The court found that Pearson's credibility had been assailed as to the particular fact of his fear of defendant and an excised portion of his statement, in which he stated he was afraid of defendant because defendant had twice threatened him, was presented to the jury. The court refused, however, to permit the state to introduce that portion of Pearson's statement in which he implicated defendant in the crime itself.
La.R.S. 15:496 provides that when the testimony of a witness has been assailed as to a particular fact stated by him, similar prior statements, made at an unsuspicious time, may be received to corroborate his testimony. The requisite foundation is simply a showing that the testimony of a witness as to a particular fact, rather than general credibility, has been assailed. See State v. Marcal, 388 So.2d 656 (La.1980), cert. den., 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834 (1981). Although defendant argues that the statement was not admissible because none of his witnesses testified Pearson actually said he was not afraid of defendant, the clear intent of the contradictory testimony by defendant's family and housemate was to show that Pearson was not afraid to be in defendant's company. The trial court properly found that a particular fact, Pearson's professed fear of defendant, had been assailed, and the introduction of the statement was proper rebuttal.

ASSIGNMENT OF ERROR NUMBER NINE
By this assignment of error, defendant submits that the trial court erred by refusing to permit him to question Lt. Clark Thomas about a statement made by defendant which the state lost or destroyed.
During the Prieur hearing, defendant claimed that he made a taped statement to Det. E.L. Hermann on October 20, 1980, and sought production of the tape. At the time of the hearing, Det. Hermann was no longer employed by the St. Tammany Parish Sheriff's Office. The trial court ordered Captain Wallace Laird, chief criminal deputy, to search the sheriff's office files and attempt to locate the tape. After an inspection, Captain Laird returned and reported that the tape was not in the file and the reports did not mention it. Laird further reported that he had spoken to Hermann, and Hermann told him he recorded a conversation in the woods with defendant. Laird indicated his impression was that the tape had been erased because it had no evidentiary value.
During the trial, Hermann testified that he recalled the circumstances of the recorded conversation. He claimed that the tape consisted only of defendant's offer of the names of several individuals he advanced as suspects for Frierson's murder. He testified *504 that he submitted the tape to Lt. Thomas and had not seen it since that time.
During Thomas's testimony, defense counsel asked if he had located the tape of this conversation, and the state objected. Out of the presence of the jury, defense counsel was allowed to determine the extent of the unsuccessful search. Thereafter, the court instructed defendant that he would not be permitted to explore the circumstances of the missing tape because, since it could not be produced, the evidence thereon was inadmissible. The court then found that the fact that a tape had been made was of no probative value.
We note, initially, that defendant does not claim that the information was truly exculpatory. Although defendant's eagerness to assist in locating the perpetrator of the offense possibly could be considered exculpatory, in light of Hermann's specific testimony during the trial, the court properly concluded that the evidence was of little probative or exculpatory value. Moreover, through Hermann's testimony the jury had already been presented with an explanation of what the tape contained and evidence that it was no longer available. Any further testimony would have served only to distract the jury. In the discipline of his court, the trial judge is vested with a sound discretion to stop the unnecessary and irrelevant examination of a witness. La.R.S. 15:275. We find no abuse of discretion.

ASSIGNMENT OF ERROR NUMBER TEN
By assignment of error number ten, defendant submits that the trial court erred by refusing to permit him to question a defense witness about a conversation he had with the victim's sister in which she attempted to influence his testimony.
During cross-examination of Glenda Hale, defendant asked if she had ever had a conversation with Gilbert Robinson about her brother's death in which she asked him to testify against defendant and to fabricate testimony against him. Mrs. Hale testified that she had not. Thereafter, defendant attempted to impeach her credibility by calling Robinson to the stand and inquiring whether or not Mrs. Hale had asked him "to do something." The state objected on the ground that the proper foundation had not been established. The court reviewed Mrs. Hale's testimony and determined that defendant was not entitled to impeach the earlier testimony because he had not provided the proper foundation, that is, he had not called her attention to the time, place and substance of the statement he claimed she made. Defendant now simply asserts that he should have been permitted to challenge her credibility; he does not set forth a legal basis for his claim.
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. La.R.S. 15:493. The trial court properly found that defendant did not furnish the requisite foundation for an attack on the credibility of Mrs. Hale.[2]

ASSIGNMENT OF ERROR NUMBER ELEVEN
By this assignment of error, defendant submits that the trial court erred by refusing to grant a mistrial after an inflammatory and prejudicial remark by the state during closing argument.
Defendant's argument is based upon the following comment by the assistant district attorney:
"I want you to send a message over to the scum of Mississippi that they can't come over here and commit murders, not over here in this Parish." *505 Defendant argues that the state's remarks categorized him as "scum," an improper and inflammatory remark. He submits that the trial court erred by failing to declare a mistrial sua sponte or by admonishing the jury.
We note, initially, that the issue as to the propriety of remarks made in closing argument is not preserved for review where defense counsel makes no objection to the statement either during argument or after the argument. State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985). In addition, there was no request for an admonition or motion for mistrial. Therefore, defendant is deemed to have waived any such error on appeal. La.C.Cr.P. art. 841.
Despite the lack of objection, extremely inflammatory and prejudicial remarks may require reversal. State v. Hookfin, supra. The implicit characterization of defendant as "scum," while inadvisable, was nonetheless not so overwhelmingly inflammatory and prejudicial as to require reversal. See State v. Gray, 351 So.2d 448 (La.1977). We note, as well, that, although a trial judge may admonish the jury without being requested to do so if he deems it necessary to protect the rights of the defendant, it is not reversible error to fail to do so when no such request has been made. State v. Lee, 340 So.2d 180, 186 n. 5 (La. 1976). This assignment of error has no merit.

ASSIGNMENTS OF ERROR NUMBERS TWELVE AND THIRTEEN
By these assignments of error, defendant contends that the verdict of guilty of second degree murder was not supported by legally sufficient evidence. He submits that the evidence was circumstantial as to his identity as the murderer and did not exclude every reasonable hypothesis of innocence.
In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard of appellate review, adopted by the Legislature in enacting La. C.Cr.P. art. 821 (pertaining to motions for post verdict judgment of acquittal based on insufficiency of evidence) is whether or not the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965 (La.1986).
When there is conflicting testimony about factual matters, the resolution of which depends on the determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. The determination of what weight to give the evidence rests solely on the discretion of the trier of fact. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Campbell, 461 So.2d 644 (La.App. 1st Cir.1984), writ denied, 466 So.2d 1299 (La. 1985). It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, supra.
The jury's verdict indicates that they found that the defendant was the perpetrator of the crime. The evidence is more consistent with the jury's finding than with any hypothesis of innocence. Defendant's special knowledge of the facts surrounding the death of Doug Frierson, as well as the direct testimony of the victim's mother, establishing that the victim was last seen alive in the company of Pearson *506 and defendant, form a basis from which the jury could find that defendant was involved in Frierson's murder. Moreover, the numerous threats made by defendant, specifically directed against Joe Pearson and (according to the trial testimony of Glenda Hale) implicitly directed against the victim, as well as his general threats to kill anyone who intended to or did testify against him, establish a motive peculiar to defendant. Although defendant contends the evidence did not eliminate the possibility that Pearson was the murderer, Pearson specifically testified that he did not kill Frierson and that defendant thereafter threatened to kill him. The jury clearly found Pearson's testimony, though brief, was more credible than the alibi evidence presented by defendant and the testimony of Gilbert Robinson that Pearson claimed he, not defendant, killed Frierson. The jury was aware that Pearson had pled guilty to and had served time as an accessory after the fact of the murder of Frierson and that the other witnesses to whom Pearson allegedly claimed to have killed Frierson did not exclude the possibility that defendant committed the murder with Pearson's assistance. Moreover, the other circumstantial evidence presented by the state, that is, evidence that defendant owned and carried a .44 caliber handgun and the proximity of his car to the murder scene, also tends to indicate defendant, not Pearson, was the driving force behind the murder. Finally, although it is not necessary to this determination, we note that defendant was guilty as a principal to the murder, whether or not he actually pulled the trigger of the murder weapon. See La.R.S. 14:24.
We find, therefore, that any rational trier of fact could have found that defendant was guilty of the second degree murder of Doug Frierson. These assignments of error have no merit.
For the above and foregoing reasons the conviction is affirmed.
AFFIRMED.
NOTES
[1] The minute entry of the hearing conducted October 3, 1984, is ambiguous. This court supplemented the record with a transcript of the hearing, La.C.Cr.P. art. 914.1(D), to determine whether or not the trial court actually ordered defendant to amend his motion.
[2] We note, moreover, that defendant did not seek to recall Mrs. Hale in order to set forth the proper foundation. See State v. Davis, 498 So. 2d 723 (La. 1986).