665 So.2d 596 (1995)
STATE of Louisiana
v.
Carlton FRANCIS.
No. 95-KA-194.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 1995.
*599 John M. Mamoulides, District Attorney, Leigh Anne Wall, Assistant District Attorney, Gretna, for plaintiff/appellee.
Linda Davis-Short, Indigent Defender Board, Gretna, for defendant/appellant.
Before GRISBAUM, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Defendant, Carlton Francis appeals his conviction and sentence in this criminal matter. We affirm.
Carlton Francis was charged, by bill of information filed on November 22, 1994, with possession of a firearm by a convicted felon. The bill alleged that Francis, who was previously convicted of first degree robbery, was in possession of a .357 revolver. He pled not guilty and proceeded to trial before a twelve person jury which found him guilty as charged on January 5, 1995. On January 27, 1995 after denying defense motions for new trial and judgment of acquittal, the trial court sentenced defendant to serve three years at hard labor, without the benefits of probation, parole or suspension of sentence. A timely appeal was filed.

FACTS
Deputy Roxanne Sparacello, an officer with the Street Crimes Unit of the Jefferson Parish Sheriff's Office, was targeting "hot zones" for drug trafficking on the Westbank on November 12, 1994. Betty Boulevard is one of the areas usually patrolled because of the numerous complaints of drug activity and violent crimes. Deputy Sparacello was driving one of three unmarked police cars used in the area that night. As Deputy Sparacello and her partner, Deputy Eddie Burback, drove up to 1600 block of Betty Boulevard they observed about eight young black males standing in the middle of the street. Because of their experience on the Street Crimes Unit, the officers believed the activity to be suspicious and decided to approach the men. As the unmarked police units approached, the subjects disbursed in different directions.
While the other officers focused on the individuals scattering in different directions, Deputy Sparacello's attention focused on an individual, subsequently identified as defendant, standing near a vehicle, "in earshot" of the group of males gathered in the street. According to the officer, after the defendant observed the unmarked police unit, he placed his hand on his waistband and proceeded to the open car door. The officer saw defendant bend down into the vehicle, get up, close the door, and walk away from the vehicle. Observing his actions, Officer Sparacello felt that the defendant had removed something from his waistband and had placed it into the vehicle. At trial, Officer Sparacello testified that in her experience and training, defendant's actions were consistent with the subject having drugs or a weapon in the waistband of his pants.
As the defendant walked away from the vehicle, the officer got out of her unit, she approached the defendant when he was about six to ten feet away from the car. After she stopped the defendant, Deputy Sparacello went over to the vehicle and observed, on the floorboard, a .357 revolver. She removed the weapon for safety reasons. At the scene, the defendant, who had given the officer a false name, told the officer that the gun belonged to his father. When the defendant's father subsequently arrived on the scene, he told the officer the defendant's real name and also denied ownership of the gun. Deputy Sparacello identified defendant in court as the individual she detained November 12, 1994.
*600 After the state rested, defense counsel called Don Murphy as a witness. According to Murphy, on the night in question he was sitting alone in the car with a .357 revolver on his lap. When the police pulled up, he put the gun under the seat and proceeded to get into the other seat. At that point, the female officer called him out of the car. He identified State Exhibit No. 1 as the weapon he had in the car that night. Mr. Murphy claimed ownership of the gun and testified that he bought it on the street. Mr. Murphy further testified that the car belonged to Sam Smith, defendant's uncle.
Defendant, who lives in the 1600 block of Betty Street, testified that on the night in question, he and Don Murphy intended to go to a club across the river. When they met outside, defendant stopped to talk to some people, while Murphy went to the car.[1] At that point, the police drove up and one of the individuals in the crowd ran into a nearby house. A woman police officer called Murphy out of the car. When the other officers came out of the house with the person who ran, the female officer went back to the car and retrieved the gun. Defendant denied possession and/or ownership of a firearm in November of 1994. He further testified that he did not know who the gun belonged to until Don Murphy admitted it was his.
By his first assignment of error, defendant challenges the sufficiency of the evidence used to convict him. He specifically argues that the state failed to show possession of a weapon by defendant, an essential element of the charged offense.[2] Defendant was charged with possession of a firearm by a convicted felon. The applicable statute, LSA-R.S. 14:95.1(A) provides in pertinent part, that, "(I)t is unlawful for any person who has been convicted of ... first degree, or simple robbery, ... to possess a firearm or carry a concealed weapon".
In State v. Burrow, 565 So.2d 972, 976 (La.App. 5 Cir.1990), writ denied, 572 So.2d 60 (La.1991), this court set forth the standard for testing the sufficiency of the evidence as follows:
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 ([La.App.] 5th Cir.1989). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 ([La.App.] 5th Cir. 1988), writ denied, 538 So.2d 1010 (La. 1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985), dissenting opinion, 475 So.2d 314 (La.1985).
Constructive possession of a firearm, as opposed to actual possession, satisfies the possession element of LSA-R.S. 14:95.1. State v. Day, 410 So.2d 741 (La. 1982). Constructive possession is a legal term describing the situation in which a person who is not in actual possession of an object can nevertheless be considered in legal possession of the thing if it is subject to his dominion and control. State v. Frank, *601 549 So.2d 401 (La.App. 3 Cir.1989); State v. Lewis, 535 So.2d 943 (La.App. 2 Cir.1988), writ denied, 538 So.2d 608 (La.1989), reconsideration denied, 541 So.2d 844 (La.1989), cert. denied, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 370 (1989). The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Trahan, 425 So.2d 1222 (La. 1983).
In the instant case, the parties stipulated that defendant was previously convicted of first degree robbery in 1992 and that he received a sentence of three years.[3] In addition to this stipulation, Deputy Sparacello testified that on November 12, 1994, while on patrol in a high crime area, she observed defendant, who was standing near an empty vehicle, place his hand on his waistband and then walk to the open door of the vehicle. She then observed defendant bend down into the vehicle, get up, close the door, and walk away from the vehicle. Believing his actions to be suspicious, she stopped defendant several feet from the vehicle. She subsequently went to the driver's door area of the vehicle that defendant had just left and observed, on the floorboard, a .357 revolver. Defendant denied ownership of the gun and claimed that it belonged to his father; however, according to Officer Sparacello, defendant's father denied ownership. Officer Sparacello identified defendant in court as the individual whose behavior she described in her testimony.
In contrast to this testimony, defendant presented the testimony of Don Murphy who claimed ownership of the gun. Defendant, in his testimony, denied possession of the gun and claimed that he did not know who the gun belonged to until Don Murphy admitted ownership.
Faced with this conflicting testimony the jury obviously chose to believe the testimony of the police officer over that of the defense witnesses. It is not the function of the appellate court to evaluate the credibility of the witnesses and to overturn the trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La. 1983); State v. Lee, 526 So.2d 450 (La.App. 5 Cir.1988). Such factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Lee, supra.
Based on the foregoing discussion, we find the evidence presented was sufficient to sustain defendant's conviction for a violation of LSA-R.S. 14:95.1. This assignment lacks merit.
By his second assignment of error, defendant contends that there was a pattern of improper remarks by the prosecutors, the accumulation of which deprived defendant of his right to a fair trial and impartial jury.
The first portion of defendant's assignment complains about numerous prejudicial comments made during voir dire. LSA-C.Cr.P. art. 786 provides:
The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case.
The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Hall, 616 So.2d 664 (La.1993); State v. Perry, 420 So.2d 139 (La.1982) stay denied, 427 So.2d 863 (La.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1982). In evaluating the fairness of the ruling, the entire voir dire examination will be considered. State v. Williams, 615 So.2d 1009 (La.App. 1 Cir.1993), writ denied, 619 So.2d 543 (La. 1993).
*602 Regarding voir dire in the instant case, defendant specifically complains that the prosecutor continuously referred to drugs which were not the basis for the present prosecution, nor was there any evidence of drug related activity presented during the trial. The references made by the prosecutor to narcotics during voir dire clearly did not relate to the defendant. The prosecutor was trying to convey to the jury the concept of constructive possession. When defense counsel objected to the prosecutor's references to narcotics, the prosecutor responded that he was trying to make an example about possession, a relevant issue, without using reference to a gun. The judge allowed the prosecutor to use the example of narcotics to explain constructive possession and told defense counsel that he could handle it on voir dire. Subsequently, defense counsel, during his voir dire examination and also in closing arguments, made it clear that the instant case did not involve narcotics, and that the district attorney's references to narcotics were strictly for purposes of example. Based on the context of the entire voir dire examination and the context in which the references to narcotics were made, we find no abuse of the trial judge's discretion in allowing the prosecutor's line of voir dire questioning.
Defendant also complains because the prosecutor, in voir dire, referred to defendant's original charge of armed robbery, which implied that defendant had been in possession of a weapon before the present charge. When defendant objected to the prosecutor's comment, the trial judge offered to instruct the jury; however, defense counsel declined and indicated that he would take care of it during his voir dire examination. Subsequently, defense counsel, during his voir dire examination, made it clear that defendant's prior conviction was for first degree robbery. Since the defendant declined the trial judge's offer to instruct the jury, he has waived the issue and is now precluded from complaining about this alleged error on appeal. See LSA-C.Cr.P. art. 841.
By this assignment, defendant also complains about improper prosecutorial comments made during closing arguments. LSA-C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
A conviction will not be reversed because of an improper closing argument unless this court is "thoroughly convinced that the remarks influenced the jury and contributed to the verdict." State v. Knighton, 436 So.2d 1141, 1152 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
It is initially noted that defendant did not lodge a contemporaneous objection to some of the comments about which he is now complaining. Specifically, he did not object to the prosecutor's statement to the jury that it is they who set the moral codes in Jefferson Parish and that, "if it comes down to believing people like Carlton Francis and Don Murphy over our own police officers, the world we live in is not a world that I want to live in." Also, there was no contemporaneous objection to what defense counsel characterized as "statements which were more than a poorly articulated criticism of defense counsel." Specifically, the prosecutor, in rebuttal, stated that it was the defense attorney's job "to get that man off, to get that convicted felon back on the streets." There is also no objection to the prosecutor's statement to the jury in which he acknowledged the officers for doing their "thankless job" and also commended their bravery in coming to court to testify. Nor does there does appear to be a contemporaneous objection to the prosecutor's implication in closing argument that defendant was involved in a drug deal and had a gun for protection. Lastly, defense counsel failed to object to the prosecution's references both in closing argument and during trial to the fact that defendant "crouched" down by the car, thereby creating a feeling of some sinister, secretive action on the part of the defendant.
*603 The issue as to the propriety of remarks made in closing argument is not preserved for review where defense counsel makes no objection to the statement either during argument or after the argument. LSA-C.Cr.P. art. 841; State v. Burge, 515 So.2d 494 (La.App. 1 Cir.1987); writ denied, 532 So.2d 112 (La.1988). This lack of a contemporaneous objection by the defendant prevented the trial court from immediately remedying the situation, had corrective action been required. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, writ denied, 94-0488 (La. 2/3/95), 649 So.2d 400. In addition, there was no request for an admonition or a mistrial. Absent such an objection, defendant can be deemed to have waived any such error, and is now precluded from raising these issues on appeal. State v. Spencer, supra; State v. Burge, supra. We are aware that, despite the lack of an objection, extremely prejudicial and inflammatory remarks require reversal. State v. Hayes, 364 So.2d 923 (La.1978). However, after reviewing the closing argument of the prosecutor, we do not find any of the remarks so inflammatory or prejudicial as to require reversal.
We now consider the prosecutorial remarks made in closing and rebuttal arguments, to which specific objections were made.
Defense counsel complains that the prosecutor repeatedly referred to defendant as "that robber" thereby implying that defendant was unworthy of belief. Defendant specifically complains about the following two references:
MR. OLINDE:
... Mr. Amstutz is correct. No one saw him with a gun. but if the car's here, and Carlton Francis crouched down behind the door, how could she? How could she possibly see him with a gun under the actions dictated by him? Not possible. And why did he crouch down under the window? I mean, we don't have to be ric-rocket scientists to figure out what these actions indicate, closing the door and then walking away from him.
The answer, ladies and gentlemen is that this robber had a gun that night ...
MR. AMSTUTZ:
... Objection Your Honor.
MR. OLINDE:
The thing that ...
THE COURT:
I'm going to allow it. Go ahead.
On rebuttal, the prosecutor again referred to defendant as "that robber" stating.
MR. OLINDE:
... He said it's not an issue of credibility between that officer and that defendant. But, if you remember, that robber over there said on the stand that the police officer's lying. That's what she (sic) said. I said, "Is the police officer lying?" and she saidhe said, "Yes."
THE COURT:
Counsel.
MR. AMSTUTZ:
Your Honor, I'm going to object to the characterization of robber. It's been several times now.
THE COURT:
... I agree. No more.
In the present case, even if this comment by the prosecutor was improper, it was not so inflammatory or prejudicial as to necessitate reversal. Moreover, the characterization was supported by the evidence as defendant stipulated that he had a prior conviction for first degree robbery. In State v. Fisher, 507 So.2d 1263 (La.App. 3 Cir.1987), writ denied, 551 So.2d 1328 (La.1989), reconsideration denied, 553 So.2d 468 (La.1989), the court concluded that the prosecutor's statement in closing argument characterizing defendant as a "poor, working, drinking, rapist" was not so inflammatory or derogatory as to necessitate reversal when taken in the context in which it was made, especially as the remark was supported by the evidence adduced at trial.
See also, State v. Burge, supra, where the court held that the implicit characterization of defendant as "scum" by prosecutor in closing argument, while inadvisable, was not so overwhelmingly inflammatory and prejudicial as to require reversal of a murder conviction.
*604 In the instant case, defendant also complains about the prosecutor's appeal to the jury to protect their Parish. Defendant specifically complains about the following:
MR. DOHRE [Assistant District Attorney]:
There's no way that you in your right conscience can come back not guilty on this knowing that they lied to you. This is a credibility call. There's no way that you can do that. These men lied to you. There's no way that she guessed those two name out the blue like they claim. There's no way ... Maybe five years from now somebody else will have jury duty and you'll tell them, "Yeah, I served on jury duty, and I did the right thing. I helped protect our Parish. I supported our Police Officers in theirin their efforts to stop crime. And I came back guilty as charged with a man who had a gun when he know [sic] he wasn't supposed to have a gun." And you'll feel good about it, because it's the only thing that you can do and live up to your oath as aas a juror. Please do the right thing. Send out a message. He wants you to send a message. You send a message. Send a message to her and to her follow officers that we support you, and we support your efforts, not the efforts of robbers, not the efforts of liars.
I know there's been a lot of talk that you don't live in there, but little kids do. You make that area safe for them.
MR. AMSTUTZ:
Objection Judge, it's prejudice again ...
A prosecutor should refrain from argument which tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict. State v. Messer, 408 So.2d 1354 (La.1982). In the present case, even assuming the prosecutor's argument was improper, it is not an error that would require reversal. See State v. Messer, supra, where the court held that the prosecutor's remarks in closing argument which amounted to a "community call to arms" were clearly improper as they were designed to personalize crimes for the jury and make it appear that defendant's gunshots at troopers were somehow directed at the Parish as a whole. However, the court concluded that, although improper, the error did not require reversal, in view of substantial evidence of defendant's guilt of the crimes charged. See also State v. Guillory, 461 So.2d 492 (La.App. 3 Cir.1984).
Defendant also complains about the prosecutor's comment that, "There's a thin blue line that separates you from the criminal element of this Parish." The context surrounding this statement was as follows:
MR. DOHRE:
You have to decide who's telling you the truth. That's what you have to decide. Is it her or is it him, and that other guy? That's what you have to decide.
There's a thin blue line that separates you from the criminal element of this Parish....
MR. AMSTUTZ:
... I'm going to object now Judge ...
MR. AMSTUTZ:
... and it's her, right there. And it's her fellow parher officers ...
THE COURT:
... Sir., You're going to have to be careful. Go ahead.
In the present case, the trial judge cautioned the prosecutor about his statement. However, this remark, when taken in the context of the prosecutor's argument does not appear to require reversal. When making this comment, the prosecutor was focusing on the credibility of the witnesses, which is a proper subject during closing arguments. See State v. Martin, 539 So.2d 1235 (La. 1989).
Based on the foregoing discussion, we do not find the prosecutor's comments so inflammatory or prejudicial that they contributed to the guilty verdict. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writ denied, 94-0475 (La. 4/4/94), 637 So.2d 450, writ denied, 94-1361 (La. 11/4/94), 644 So.2d 1055. Moreover, the trial judge instructed the jury that "[i]n closing arguments the attorneys are permitted to present for your consideration their contentions regarding *605 what the evidence has shown or not shown and what conclusions they think may be drawn from the evidence. The opening statement and the closing arguments are not to be considered as evidence." We find that the numerous allegations of prosecutorial misconduct raised in this assignment are without merit.
By his third assignment, defendant complains that defense witness, Don Murphy, was improperly impeached on the arrest record of his brother, Shawn Murphy, when the District Attorney knew that Don Murphy had no prior convictions. Defense counsel cites no authority for this argument other than LSA-C.E. art. 609.1.
In contrast, the state contends that it was entitled to cross-examine this witness regarding his arrest record in an attempt to ascertain his identity. Moreover, the state argues that the door was opened to this line of questioning when the witness, in a non-responsive answer to the prosecutor's question about convictions, stated "I've never been arrested for no felony." In its appellate brief, the state does not address or refute the fact that the arrest record belonged to Shawn Murphy, rather than defense witness Don Murphy.
On direct examination, pursuant to questioning by defense counsel, witness Don Murphy, who claimed ownership of the gun in the instant case, testified that he had never been convicted of any crime, either a felony or a misdemeanor. On cross-examination, the prosecutor tried to impeach this witness by asking him about two prior criminal incidents. Specifically, the prosecutor delved into whether this witness had previously been arrested for possession of semi-automatic weapons and cocaine in October of 1994. The prosecutor also asked Murphy if he had previously been arrested on December 20, 1994 for possession of cocaine. Despite the fact that the prosecutor produced a rap sheet and arrest register showing these arrests, this witness consistently denied any arrest for those felonies. On re-direct by defense counsel, Don Murphy maintained that he had never been convicted of a crime, and that the information the prosecutor had related to his brother Shawn Murphy.
Defendant subsequently filed a Motion for New Trial pursuant to LSA-C.Cr.P. art. 851, asserting numerous grounds in support of his motion, including numerous alleged instances of prosecutorial misconduct. Defendant specifically asserted, in part, the following:
When the defense presented a witness, namely, Don Murphy, the State of Louisiana used apparently erroneous, misleading, prejudicial and inflammatory comments and/or actions to taint and confuse the jury against giving the defendant a fair trial to-wit:
1) knowingly using the conviction, probation, previous arrests, rap sheet, arrest report, statement, and mug shot of one Shawn Murphy to attempt to impeach the credibility of Don Murphy, who had never been convicted of a crime;
2) knowingly and intentionally using the above information even though the same representatives of the State had information to the contrary, namely, that Don Murphy had no convictions as set forth and evident in and by the District Attorney's file pursuant to Jefferson Parish Clerk of Court docket number 94-5706 as specifically delineated in (1) the investigator's work sheet; (2) the designation that Don Murphy had "no previous convictions" as evidenced by the J.P.S.O. Bureau of Identification as reported by Liz Laurent on 10-6-94; and (3) the rap sheet of Don Murphy furnished to the District Attorney on 10-3-94. Yet, despite the information in its own files the District Attorney attempted to impeach the witness knowingly using false and prejudicial information;
Prior to sentencing, the trial judge entertained counsel's argument in support of his Motion for New Trial and then denied the motion, finding that the evidence was sufficient to sustain defendant's conviction. The trial judge, in her denial, did not address counsel's argument about the improper impeachment. Defendant now contends that the trial judge erred in denying his Motion for New Trial based on the state's conduct in cross-examining defense witness, Don Murphy.
*606 It is noted that after the record was lodged on appeal, defense counsel filed a Motion to Supplement Record on June 19, 1995, to include "the transcription of the note of evidence of Corey Martin and the note of evidence of Corey Cason taken in proceedings of January 23, 1995 and the Court's order dated April 20, 1995, releasing Don Murphy on this charge in Docket No. 94-5706 in that matter entitled State of Louisiana vs. Don Murphy." That Motion to Supplement Record was granted on July 7, 1995. A review of this supplemental transcript reflects that it was, in fact, Shawn Murphy who had been arrested for the violations in October and December of 1994 which the prosecutor used in an attempt to impeach Don Murphy. The transcript from April 20, 1995, which was not available to the trial court because that proceeding occurred after the sentencing and denial of defendant's motion for new trial, reflects that Don Murphy was released on those charges.
LSA-C.E. art. 609.1 reads, in part, as follows:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of conviction. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
As indicated by the Author's Notes (2), LSA-C.E. art. 609.1, the "use of the word `generally' presumably acknowledges the possible use of arrests, indictments, and the like where independently relevant to show bias." In State v. Griffin, 618 So.2d 680 (La.App. 2 Cir.1993), writ denied, 625 So.2d 1063 (La.1993), the court acknowledged that several cases have recognized the right to interrogate a witness, upon issues other than his credibility, about matters beyond convictions.
In the present case, regardless of whether or not the state was entitled to use prior arrests for impeachment, the questioning by the prosecutor still amounted to improper impeachment as the arrest record, although reflecting Don Murphy's name, really was the arrest record of his brother, Shawn Murphy. Since it appears that the questioning was improper, it must now be decided whether such error can be deemed harmless.
LSA-C.Cr.P. art. 921 provides that "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." In determining whether erroneous admission of evidence requires reversal of a defendant's conviction, the proper standard to be used is whether there is a reasonable possibility that the evidence might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt that it did not. State v. Bonck, 613 So.2d 1125 (La.App. 5 Cir.1993), writ denied, 620 So.2d 840 (La.1993). In State v. Thomas, 589 So.2d 555, 567 (La.App. 1 Cir.1991), the court stated that "[t]he improper impeachment and/or questioning of a witness will not require the reversal of a conviction absent a clear showing that the matters complained of are of such an extremely prejudicial nature that the defendant was deprived of a fair and impartial trial."
In the present case, the prosecutor's improper impeachment cast doubt on the credibility of defendant's primary witness who claimed ownership of the gun. However, at the time the prosecutor asked Don Murphy *607 about these prior arrests, both the arrest register and the rap sheet apparently reflected Don Murphy's name, address, and date of birth. Additionally, in defense counsel's re-direct examination of Don Murphy it was emphasized that the prior arrests were those of his brother. Defendant also showed the jury that he had gold teeth, which were not present in the photograph used by the state (marked as State Exhibit 5). Considering the circumstances of this case, we do not find that the improper remarks were so prejudicial as to warrant reversal.
In his fourth assignment, defendant contends that the trial judge failed to give him credit for time served. LSA-C.Cr.P. art. 880 provides that "[t]he court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence."
In the present case, while the minute entry reflects that defendant was given credit for time served, the transcript does not so reflect. Generally, where there is a discrepancy between the minute entry and transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732 (La.1983). Since article 880 is mandatory in nature, the defendant is entitled to credit for time served, despite the fact that it is not specifically stated in the transcript. In its appellate brief, the state concedes that the transcript does not reflect credit for time served. Consequently we order that the sentence be amended to reflect credit for time served. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.
In his fifth assignment the defendant argues that the trial court failed to advise him of the prescriptive period for post conviction relief in accordance with LSA-C.Cr.P. art. 930.8 C. That statute provides that "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." In the present case, as the state concedes, the record reveals that the trial judge failed to advise defendant of the prescriptive period.
However, failure to inform defendant does not constitute grounds for reversing the sentence or remanding the case for resentencing. LSA-C.Cr.P. art. 921. State v. McSweeney, 619 So.2d 861 (La.App. 3 Cir.1993). Consequently, we instruct the trial court to inform defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Kershaw, supra.
In his final assignment of error, the defendant requests a review of the record for errors patent. We have made such a review and find that the defendant's sentence is illegally lenient insofar as the trial judge failed to impose the mandatory fine set forth in the penalty provision of LSA-R.S. 14:95.1.[4] However, when the state fails to raise the issue by motion or argument to the court, as is the case here, the error will not be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986).
For the foregoing reasons defendant's conviction and sentence are affirmed. The trial court is ordered to amend the sentence to reflect that the defendant is given credit for time served. The trial court is further ordered to inform the defendant of the provisions of LSA-C.Cr.P. art 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.
AFFIRMED AS AMENDED; REMANDED
NOTES
[1] Defendant testified that the car was officially registered to Sam Smith, his uncle, although it had been sold recently to defendant's mother.
[2] In the discussion on this assignment, defendant alleges that there was no reasonable suspicion to stop him and certainly no probable cause to arrest him. The reasonableness of defendant's stop has no relevance to the sufficiency of the evidence. Moreover, although a motion to suppress was filed in the district court, there was no hearing on the motion, nor was the suppression of the evidence urged at trial.
[3] There is a discrepancy as to whether defendant's prior conviction was in September or December of 1992.
[4] LSA-R.S. 14:95.1 B provides that "[w]hoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than three nor more than ten years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars."