CARTER, Judge.
Defendant, Jessie Westmoreland, was charged by bill of information with illegal possession of stolen things valued at five hundred dollars or more, a violation of LSA-R.S. 14:69. Defendant was tried by a jury, which convicted him of the responsive offense of illegal possession of stolen things valued at one hundred dollars or more, but less than five hundred dollars. Defendant was subsequently charged, adjudged, and sentenced as a second felony habitual offender. The trial court sentenced defendant to imprisonment at hard labor for a term of four years, without benefit of probation, parole or suspension of sentence. Defendant has appealed, urging three assignments of error:
1. The trial court improperly restricted the cross-examination of state witness Thomas Mason, regarding Mason’s prior convictions.
2. The trial court improperly denied defendant’s motion for new trial and motion for post-verdict judgment of acquittal, because the state’s evidence was insufficient to support defendant’s conviction.
3. The trial court imposed an excessive sentence by imposing the maximum sentence and denying eligibility for parole.
On July 25,1987, Glenn Creel returned to his home in Bogalusa, Louisiana, from work. Without his permission, his home had been forcibly entered, and his twenty-five inch Zenith console color television had been taken. Creel testified that he had paid about twelve hundred dollars for the television and that he thought he had purchased it in 1981 or 1982. According to Creel, at the time the television was taken, it was in “excellent shape” and was worth a minimum of two-thirds of the price he had paid.
On August 20, 1987, Captain Dorman Pritchard of the Bogalusa City Police Department received information from a confidential informant as to the location of the television taken during the burglary of the Creel residence. On the basis of that information, a search warrant was issued on August 20 for a search of the residence of Thomas Mason. That same day, Captain Pritchard, Detective Glenn McClendon of the Bogalusa City Police Department, and Officer Darnell Ulvick of the Washington Parish Sheriff’s Department went to the residence of Thomas Mason in Washington Parish. There, they presented the warrant to a white female. In conducting the search, they found and seized a twenty-five inch Zenith color television in the living room. Pritchard observed that the serial number had been removed from the television.
On the day the search warrant was being executed, defendant told Mason the tele *721 vision was stolen, and, thereupon, Mason went to the police station. While the officers were conducting the search of Mason’s residence, they received notice that Thomas Mason was at the police station and wanted to talk to them.
At trial, the state introduced into evidence state exhibit S-l, a copy of the search warrant, and state exhibit S-2, a photograph of Glenn Creel’s television. Creel identified S-2 as depicting the television taken during the July 25 burglary of his home. Captain Pritchard and Detective McClendon each identified S-2 as a photograph of the television seized during the search of Mason’s residence.
After the completion of the search, based upon information obtained from Mason, defendant was arrested on the instant charge. Mason was also arrested for the illegal possession of stolen things in regard to Creel’s television. Mason pled guilty to the charge in January of 1988 and received a probated sentence.
At defendant’s trial, Thomas Mason testified that he had known defendant for about a year and that they had become acquainted when defendant came to the pawnshop Mason was then operating in Bogalusa. Based upon Mason’s testimony, defendant came to the pawnshop and asked him if he wanted to buy a television. Mason purchased the television from defendant on August 14, 1987, for one hundred dollars and the additional consideration of allowing defendant to reside with him for two months without having to pay any rent. Defendant told Mason he had bought the television when it was new, and defendant signed a bill of sale for the television, which he gave to Mason. Defendant delivered the television to Mason’s home. Mason stated that he had never had possession of the television prior to its delivery to his home. Mason did not recall if the television had a serial number on it at the time it was delivered to him. After viewing S-2, Mason positively identified it as a picture of the television he had purchased from defendant.
Mason testified that, about a week after he bought the television, (i.e., on the day his residence was searched and he was arrested) defendant was doing some cleaning work at the pawnshop. At that time, defendant received a telephone call. Mason stated that, after the call, defendant indicated to him that he knew the television was stolen. Mason testified that he then went to the police station and that while there his residence was being searched by the police.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court improperly restricted the cross-examination of state witness Thomas Mason, regarding Mason’s prior convictions. Defendant argues that the line of inquiry so restricted was relevant, as a matter of general impeachment, to show Mason’s prior burglaries followed the same pattern as the Creel burglary, i.e., that Mason might have committed the Creel burglary.
On direct examination, Mason testified he had six prior convictions for “residential burglary.” Thereafter, during cross-examination, the following exchange occurred:
Q Let’s go back to 1982. You were convicted of six counts of burglary; is that right?
A Right.
Q Why don’t you tell us how you did those burglaries?
BY MR. BRIESE: Objection, Your Honor. He’s not required to testify to that.
BY MR. GUILLORY: Your Honor, on impeachment, we’re allowed to ask the facts and circumstances of prior convictions.
BY THE COURT: Sustained.
BY MR. GUILLORY: We respectfully note our objection to the Court’s ruling.
EXAMINATION BY MR. GUILLORY:
Q In these burglaries back in 1982 that you plead to, did you break any windows to get in the house?
BY MR. BRIESE: Objection, Your Honor. Same reason, not relevant also.
BY THE COURT: Sustained.
*722 BY MR. GUILLORY: We respectfully note our objection to the Court’s ruling.
The rule allowing the cross-examination of a witness as to a past conviction must be narrowly rather than broadly construed. State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1345 (La. 1984). The trial court has the duty of restricting an inquiry into the details of a past conviction within reasonable bounds. State v. Oliver, 387 So.2d 1154 (La.1980). The details of a conviction may be the subject of inquiry only to show the true nature of the offense. State v. Huizar, 414 So.2d 741 (La.1982).
In this case, we conclude that the restricted line of inquiry was directed at establishing factual details of the witness’s prior offenses beyond those necessary to impeach the witness by showing the true nature of the offenses. Hence, we find no, abuse of the trial court’s discretion.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. TWO:
By means of this assignment of error, defendant contends that the trial court erred by denying his motions for a new trial and a post-verdict judgment of acquittal because the evidence was insufficient to support his conviction. He argues that the state’s evidence of the requisite element of knowledge; i.e., that the thing possessed was stolen, showed only that he knew the television was stolen about a week after the sale rather than at the time of the sale. Defendant claims that his actions and the circumstances of the sale do not reflect any guilty knowledge since his signing of a bill of sale was inconsistent with any attempt to hide the transaction and the five to six-year-old television was sold for its approximate value. Additionally, defendant asserts that, absent corroborating evidence, Mason’s testimony is not worthy of belief. In its brief, the state emphasizes that defendant delivered the television to Mason’s home, and, in concluding defendant had knowledge the television was stolen, the state relies on disclosures defendant made to Mason after the delivery of the television, including defendant’s misstatement of fact (at the time of the sale) that he had purchased the television new.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). The standard has been codified in LSA-C.Cr.P. art. 821.
The requirement that the evidence be viewed in the light most favorable to the prosecution obliges the reviewing court to defer to “[t]he actual trier of fact’s rational credibility calls, evidence weighing and inference drawing.” State v. Mussall, 523 So.2d 1305, 1311 (La.1988) citing Jackson v. Virginia, supra. Thus, the reviewing court is not permitted “to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Mussall, supra, citing State v. Rosiere, 488 So.2d 965 (La.1986). See also State v. Burge, 515 So.2d 494 (La.App. 1st Cir.1987), writ denied, 532 So.2d 112 (La.1988). It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, supra.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, supra.
*723 The crime of illegal possession of stolen things is defined in LSA-R.S. 14:69 A as follows:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Thus, there are three elements of the crime: (1) intent, (2) possessing, procuring, receiving, or concealing stolen goods, and (3) knowledge the goods were stolen. State v. Mangrum, 509 So.2d 818 (La.App. 1st Cir.1987).
The evidence showed that the television set depicted in S-2 was the one stolen during the July 25, 1987, burglary of Glenn Creel’s home and sold by defendant to Mason on August 14. Creel had purchased the television in 1981 or 1982 for approximately twelve hundred dollars. Creel testified the television was in “excellent shape” and worth a minimum of two-thirds its original price when it was stolen.
There is no evidence linking defendant to the burglary. In regard to the “possessing, procuring, receiving or concealing” of the stolen television, the evidence showed that defendant possessed the television at the time of its delivery to Mason’s home following the August 14 sale.
Mason’s testimony was uncontradicted that defendant approached him at the pawnshop concerning the sale of the television. Defendant told Mason that the television had been purchased new by him. Defendant sold Mason the television for one hundred dollars and two months of free lodging. Defendant gave Mason a signed bill of sale evidencing and setting forth the terms of the transaction. Delivery of the set was made to Mason's home, where the set was subsequently seized by the police on August 20 pursuant to a search warrant.
Mason had gone to the police station and was there while the search warrant was • being executed. His actions in going to the station had been prompted by disclosures made to him on August 20. In regard to those disclosures, Mason testified that defendant told him the following:
He told me that the law was on him about the T.V. That the T.V. was stolen. Somebody told him the law was coming to get the T.V. at my house.
The above disclosures show that, (on August 20) six days after defendant relinquished possession of the television to Mason by delivering it to him, defendant knew the television to be stolen. There was no contradictory evidence. Of the various competing inferences to be drawn from the evidence, we conclude that a rational trier of fact could conclude that the state proved defendant possessed the stolen television under circumstances indicating defendant knew or had good reason to believe it was stolen. This is reinforced by the evidence that defendant delivered the television to Mason’s home rather than the pawnshop and that the defendant represented to Mason at the time of the sale that he had acquired the television new. It is also relevant to note that the serial number had been removed from the television sometime prior to its seizure.
Based on all the above, we conclude that the state’s proof of the alleged crime is constitutionally sufficient in this case. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. THREE:
By means of this assignment, defendant contends his sentence is excessive because the trial court imposed the maximum sentence and imposed it without benefit of probation, parole, or suspension of sentence.
Initially, we focus our attention on defendant’s claim that the trial court improperly denied him the benefit of probation, parole, or suspension of sentence. We find no merit to that claim.
In the habitual offender bill of information, the state set forth two prior convictions as predicate offenses for purposes of habitual felony enhancement of defendant’s sentence. At the habitual offender hearing, the state presented proof of the two predicate offenses, i.e., guilty pleas *724 entered on March 18, 1982, to the offenses of distribution of marijuana and receiving stolen things with a value of one hundred dollars or more, but less than five hundred dollars. Although the trial court ruled the state had proved defendant’s identity as the person who had committed both predicate offenses, the court (apparently because the guilty pleas had been entered on the same day) decided to adjudge defendant only as a second felony habitual offender.
The instant offense is punishable by imprisonment with or without hard labor for not more than two years and/or a maximum fine of two thousand dollars. LSA-R.S. 14:69 B(2). As a second felony habitual offender, LSA-R.S. 15:529.1 A(l) provides for enhancement of defendant’s sentence of imprisonment for a term of not less than one-third the longest term and not more than twice the longest term for a first conviction for the instant offense. Neither LSA-R.S. 14:69 B(2) nor LSA-R.S. 15:529.1 A(1) provide for the denial of the benefit of probation, parole, or suspension of sentence. LSA-R.S. 15:529.1 G, which provides that a sentence under the habitual offender law shall be without “benefit of probation or suspension of sentence,” was not in effect at the time of the commission of the instant offense.[1] Hence, LSA-R.S. 15:529.1 G is inapplicable to this case.
Nonetheless, LSA-C.Cr.P. art. 893 A (as amended by Act 770 of 1986) is applicable to this case[2] and provided that one convicted of a second felony was ineligible for probation and suspension of sentence. LSA-R.S. 15:574.4 A(l) provides, in pertinent part, as follows: “A person convicted of a third or subsequent felony and committed to the Department of Public Safety and Corrections shall not be eligible for parole.”
Although defendant was adjudicated only as a second felony habitual offender and could be sentenced under LSA-R.S. 15:529.1 only as such, because the record of the habitual offender proceeding revealed he had two prior felonies, the instant offense was (at least) defendant’s third felony conviction for purposes of LSA-C.Cr.P. art. 893 A and LSA-R.S. 15:574.4 A(l). Hence, defendant was not eligible for probation, parole, or suspension of sentence. See State v. Bell, 471 So.2d 1190 (La.App. 3rd Cir.1985), writ denied, 477 So.2d 97 (La.1985). Accordingly, the trial court correctly denied probation, parole, and suspension of sentence in sentencing defendant.
We now turn our attention to the remaining argument of defendant concerning the alleged excessiveness of his sentence.
Article 1, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La. 1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Tate, 506 So.2d 546 (La.App. 1st Cir.1987), writ denied, 511 So.2d 1152 (La.1987). In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, supra. A sentence is excessive when it is grossly out of proportion to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court *725 considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La.1982). Maximum sentences are reserved for the most serious offenses and the worst offenders. State v. Lanelos, supra; State v. Counterman, 515 So.2d 533 (La.App. 1st Cir.1987).
A trial court’s reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.-1, are an important aid to this court when reviewing a sentence alleged to be excessive. State v. Christy, 509 So.2d 829 (La. App. 1st Cir.1987), writ denied, 513 So.2d 296 (La.1987). The trial court need not recite the entire checklist found in LSA-C. Cr.P. art. 894.1. However, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La.1984).
The record reveals that the trial court ordered and received a presentence investigation report in this case. In its initial sentencing remarks, the court noted that it had studied the report for the purpose of determining an appropriate sentence in this case and that the report reflected defendant’s substantial criminal history as being identical to that brought out during the (habitual offender) hearing.
The court inquired as to whether or not defendant wanted to make any statement relating to possible mitigating factors and whether or not defense counsel desired to make any statement. Both replied in the negative.
In its reasons for sentencing, the court stated that it had carefully studied the presentence investigation report and that it had considered the content of the report and the nature of the instant offense in light of the sentencing guidelines contained in LSA-C.Cr.P. art. 894.1. Based upon defendant’s prior conduct, the court articulated that it felt there was an undue risk that, if defendant were a candidate for a suspended sentence, defendant would commit another crime during the period of such a suspended sentence. The court stated that defendant was very much in need of correctional treatment in a custodial environment that only a hard labor institution could provide. The court noted that a lesser sentence would deprecate the seriousness of the crime. The court stated that it found that defendant had not acted under strong provocation but had committed the instant offense of his own will to do so. In light of defendant’s past conduct and the penalties he had received therefor, the court concluded there were no grounds to excuse or justify defendant’s conduct. The court noted the victim had not induced or facilitated the commission of the instant offense. As a result of its findings and stated reasons for sentencing, the trial court concluded defendant should be sentenced to the maximum sentence for a second felony habitual offender.
Considering defendant’s criminal record, which included a prior conviction for receiving stolen things valued at one hundred dollars or more but less than five hundred dollars, the instant offense certainly falls within the category of the most serious violation of possession of stolen things valued at one hundred dollars or more but less than five hundred dollars and shows that defendant is one of the worst offenders. We cannot say that defendant’s sentence of imprisonment at hard labor for a term of four years without benefit of probation, parole, or suspension of sentence is excessive under the instant circumstances. The trial court fully considered the range of sentencing alternatives and individualized the sentence to the particular defendant for the particular crime involved. Hence, this assignment lacks merit.
CONCLUSION
For the above reasons, the sentence and conviction are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
SAVOIE, J., dissents and assigns reasons.

. Acts 1987, No. 774, § 1, which added LSA-R.S. 15:529.1 G, took effect September 1, 1987.

. LSA-C.Cr.P. art. 893 A, as amended by Acts 1986, No. 770, § 1, provided as follows:
When it appears that the best interest of the public and of the defendant will be served, the court, after conviction of a felony for which the punishment is with or without hard labor or a felony which is a violation of the Controlled Dangerous Substances Law of Louisiana, noncapital felony, may suspend, in whole or in part, for the first conviction only the imposition or execution of any sentence, where suspension is allowed under the law and in either case place the defendant on probation under the supervision of the division of probation and parole. The period of probation shall be specified and shall not be less than one year nor more than five years. The suspended sentence shall be regarded as a sentence for the purpose of granting or denying a new trial or appeal.