738 So.2d 614 (1999)
STATE of Louisiana
v.
Neal G. DIVINE aka Terry Horton.
No. 98-KA-812.
Court of Appeal of Louisiana, Fifth Circuit.
May 19, 1999.
Rehearing Denied July 19, 1999.
*615 Paul D. Connick, Jr., District Attorney, Alison Wallis, Terry M. Boudreaux, George M. Kennedy, Assistant District Attorneys, Courthouse Annex, Gretna, Louisiana, Counsels for plaintiff-appellee.
Provino Mosca, Mosca & Mosca, New Orleans, Louisiana, and Joseph Negron, Jr., Stuart, Florida, Counsels for defendant-appellant.
Court composed of Judges H. CHARLES GAUDIN, SOL GOTHARD and MARION F. EDWARDS.
GAUDIN, Judge.
Neal G. Divine, a/k/a Terry Horton, was convicted by a Jefferson Parish jury of armed robbery, LSA-R.S. 14:64, and attempted second degree murder, LSA-R.S. 14:27:30.1, for assaulting and robbing Robert Partain, a Treasure Chest casino patron, in the casino's restroom on June 23, 1996. He was sentenced as a second felony offender to 99 years for armed robbery and 30 years for attempted second degree murder. The sentences are to be served without benefit of parole, probation or suspension and they are to run concurrent with each other.
The defendant was charged, prosecuted and convicted and he is referred to in this opinion as "Neal G. Divine, a/k/a Terry *616 Horton." It is clear from the record, however, that Neal G. Divine is an alias. His real name is Terry Joseph Horton.
On appeal, Divine assigns various district court errors, including a contention that his trial counsel was ineffective. We did not consider the ineffective assistance of counsel allegation as this issue is more appropriately raised via a post-conviction petition for relief which would enable the trial judge to conduct a full evidentiary hearing in accord with State v. Cooks, 720 So.2d 637 (La.1998), and State v. Hamilton, 699 So.2d 29 (La.1997). We found no reversible error in Divine's other assignments of error, which are:
(1) denial of his pre-trial Motion to Continue,
(2) the verdict was not responsive to the Bill of Information,
(3) the verdict was contrary to the law and the evidence,
(4) the jury charge was incorrect,
(5) double jeopardy,
(6) denial of post-trial and pre-sentence pleadings, including Motion for a New Trial, Motion in Arrest of Judgment, Motion to Quash and Motion for a Pre-sentence investigation, was error,
(7) the sentence was excessive,
(8) the prosecutor made an impermissible reference to Divine's statement during the state's opening argument,
(9) it was reversible error for a police officer to comment on defendant's silence at time of arrest,
(10) the prosecutor's characterization of the defendant in his closing argument as "the meanest, the scariest, the most Charles Manson-looking guy in the place," was prejudicial, and
(11) it was reversible error for the state to comment on a witness' right to remain silent.
In searching for errors patent, we found that Divine was not advised of the prescriptive period for post-conviction relief as specified in LSA-C.Cr.P. art. 930.8. We remand for that purpose and for the trial court to place proof in the record that appellant received such notice.

ASSIGNMENT NO. 1
When the case was called for trial on August 14, 1997, Divine's attorney, Bruce Netterville, orally moved for a continuance, saying that Divine had told him that he had hired another lawyer, Provino Mosca, to represent him. This was the case's first trial setting.
In denying the motion, the trial judge said:
"All right. The Court knows Mr. Mosca. I certainly would believe that if Mr. Mosca had been retained in this matter, that he would be here today, or he would have called the Court to indicate that he, in fact, had been retained.
"Reviewing the record, it appears that this matter was set for the arraignment of the defendant on June 19th, 1997, and that was the date, in fact, he was arraigned. And a trial date of September the 11th[1] was set. So we have hadand from the 11th, it was continued to today. So it does appear that it is, you might say, a first setting. However, there has been a two-month period for the defendant to retain new counsel, if he chose to do so, or to handle any other matters that he felt appropriate. So your request for a continuance is denied."
The granting or refusal of a motion for a continuance rests with the sound discretion of the trial judge. Such a ruling is not upset on appeal absent a clear abuse of discretion and a showing of specific prejudice. We see no reversible error, *617 noting that it is well settled that a defendant in a criminal trial cannot, by a last minute change of counsel, force a postponement. In State v. Anthony, 347 So.2d 483 (La.1977), the defendant sought to continue his trial because he claimed to have procured new trial counsel. The Louisiana Supreme Court upheld the trial court's denial of the defendant's motion to continue, and assigned these reasons at page 487:
"The trial court's ruling was correct. We find the following pertinent in reaching our conclusion: (1) The alleged retained attorney neither appeared in court to verify his retention, nor communicated with the trial judge in any other way; (2) the record reflects only defendant's statement that a third party had contacted and retained the attorney and that defendant had only had a telephone conversation with the attorney; (3) appointed counsel had filed a prior motion on the same ground regarding another alleged retained counsel; (4) the motion was made on the morning of trial; and (5) the alleged retained counsel neither made an appearance nor contacted the court either during the trial or on the Motion for New Trial. We are convinced, as was the trial judge, that defendant's request was a dilatory tactic."
In State v. Leggett, 363 So.2d 434 (La. 1978), the Louisiana Supreme Court again visited the issue of retaining new counsel on the morning of trial, saying at page 436:
"Both the federal and state constitutions provide that the accused has the right to counsel of his own choosing to defend him on a criminal charge. However, this right does not permit arbitrary action which obstructs orderly procedures in the courts. Rather the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. Once the trial day has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial judge. This court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel."
In the present case, as correctly noted by the trial judge, Divine had approximately two months between the time he was arraigned and the date set for his trial to retain other counsel.
Mr. Mosca became attorney of record for Divine on October 1, 1997, after trial but before sentencing. Mr. Netterville withdrew on October 2, 1997. While we do not believe that Divine's Motion to Continue was a dilatory tactic, as was true in Anthony, we cannot say the trial judge erred in denying the motion for the reasons expressed by him. Mr. Netterville did not advise the trial judge that he was unprepared to represent Divine.

ASSIGNMENT NO. 2
This was neither briefed nor argued and is considered abandoned.

ASSIGNMENT NO. 3
Here, Divine argues that the evidence did not support findings of guilty because (1) there was no evidence of specific intent to kill, (2) there was no evidence that Divine took anything of value from the victim and (3) there was no identification of Divine at trial. Consequently, Divine contends, the state failed to prove beyond a reasonable doubt that he went into the bathroom and stabbed and robbed Partain.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 *618 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When assessing the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See also State v. Rosiere, 488 So.2d 965 (La. 1986). Guilt can be shown by direct and/or circumstantial evidence. LSA-R.S. 15:438 states:
"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
Partain, the victim, testified that he arrived at the Treasure Chest casino at approximately 11:30 p.m. on June 23, 1996. He said that he had two $100.00 bills and approximately $130.00 in smaller denominations. He walked into the restroom to use the urinal. He did not see anyone else in the bathroom or the stalls. He took the two $100.00 bills out of his right pocket because he wanted to place them in his money clip, which he was carrying in his left pocket. At that moment, he heard a loud noise that sounded like a door had been kicked open. As he leaned back to see what the noise was, someone grabbed him by the shoulders, spun him around and stabbed him in the throat. He testified that 90 per-cent of his windpipe was cut. Partain testified that he knew that he was bleeding badly, so he left the bathroom. He explained that he was very disoriented at this point, and he remembered tripping or falling, and that he was then unable to get to his feet. He said that he was not able to see the person who had assaulted him and that he did not attack anyone in the bathroom.
Partain's two $100.00 bills were missing, he said, right after he was stabbed. Police officers said they saw several smaller bills on the bathroom floor where the assault had occurred.
Divine did not testify at trial but his voluntary statement, taken about seven hours after the casino incident, is in evidence. According to Divine, he had gone to the restroom where he was victimized by "a very tall, large man, wearing light colored clothes." When he went in the restroom, Divine said, he had four $100.00 bills, which he had won at the casino that evening.
From Divine's statement:
"I walked up next to him and he was in the middle stall and I started peeing and I had my zipper open and my wallet was in there. I finished peeing and I looked up to the man and asked him how well did you do tonight. He did not say anything. Then I pulled my zipper up and he was looking down at me. He grabbed my hair and started smashing my head against the wall. I had my hair in a pony tail and my pony tail is a little knub. He struck my head against the wall three times and I reached down into my pocket and he reached down into my waist and you could clearly see my hundreds and I could feel him pulling on my belt. He stepped back from the stall and grabbed in my bag with his left hand. At that time all I knew was that the guy was trying to rob me. I pulled my knife out, it has a blade that is two or two and a half inches long. I opened the knife with my thumb, and I hit him in the neck, shoulder bone, or maybe the chin. He screamed something. He then let go of me and I ran out of the door. He did not steal any money from me. I ran out the door. I was just trying to defend myself."
Divine explained that he had his money in a belly bag. When he was attacked, Divine said, both the zipper to his belly bag and the zipper on his pants were open.
After this confrontation, Divine stated that he "... left the bathroom pretty fast and went down the escalator and ran out the door and went to the valet parking lot and I ran to the cars and I heard someone yell at me and I thought it was the same *619 guy and I jumped a fence and raised my hands when I saw the police."
Divine said he did not know what happened to the knife. It was not found. He said that when he ran out of the bathroom, casino security guards "were on the right." Asked why he did not attempt to contact the guards or anyone else to advise them of the alleged robbery attempt, Divine said:
"Soon as it happened I ran into the parking lot and a guy yelled and I was arrested, that was it."
When arrested, Divine had the four $100.00 bills in his possession he said he had won earlier playing blackjack. He said he cashed in his winning chips. Divine's statement was taken by Kenner police officer, Keith Peppertone, and was placed in evidence without objection. Peppertone said that he saw no bruises or cuts on Divine's face.
Among the state's witnesses were Samuel Nuccio and Carl Portera, both of whom testified they saw Divine run from the restroom and out of the casino. Nuccio said:
"And he was running down the escalator, pushing people out of the way to get out of there. He met up with the two at the bottom, and they all took off running through the corridor towards the parking lot."
The "two at the bottom" were Divine's father, John Horton, and stepmother. Divine's father was the only defense witness and he said that he would expect his son to run if someone was chasing him but he admitted that he didn't see anyone following his son.
Nuccio joined police officers as they chased Divine. Nuccio said Divine jumped a fence and ran to a nearby apartment complex. "At this point," Nuccio stated, "everyone is looking through the whole complex, looking for the guy. We spotted him. He took off between some other cars, and he disappeared again. And then we spotted him again ... and caught him under a boat house, under a boat in the water."
Under cross-examination, Nuccio was asked whether he saw "my client" run out of the restroom. Nuccio said yes.
Portera did not participate in the chase but he later identified Divine from a photographic lineup.
Another prosecution witness was George Sun, who was seated in a stall when the confrontation in the restroom occurred. He heard a loud noise, he said, but didn't hear anyone fighting.
It is apparent from the guilty verdicts that jurors believed Partain's testimony. We do not know, of course, what weight the jury gave to Divine's flight but it seems likely that his version of the restroom incident would have been more believable if he had immediately tried to contact casino security officers for help instead of straightaway running off. Both Nuccio and Portera said that Divine ran away without attempting to contact security personnel, who were in the area although not in the restroom itself.
In evidence is a video tape showing Divine running from the casino. Elliott Fasbender, the casino's Director of Security, testified that he examined all available casino tapes and that there was no coverage of Divine cashing in any chips. Divine's counsel did not formally ask for production of all surveillance tapes until the first day of trial; a short composite tape was then produced and it was shown several times to the jury.
Partain's neck wound was serious and life-threatening. He underwent emergency surgery and was on life support equipment for four days. Dr. Robert Zelenak, who treated Partain in the Kenner hospital emergency room for what the doctor called a "deep laceration", said that Partain was in danger of dying and that he was rushed to Charity Hospital in New Orleans for more sophisticated treatment. Dr. Zelenak also said that Partain had cut wounds *620 on a thumb and on a wrist which the doctor described as "defensive", i.e., wounds typical of a person trying to protect himself from further injury.
Specific intent to kill or to inflict great bodily harm, being a state of mind, may be inferred from the circumstances of the case and the action of the accused. The Divine jury could have concluded, from the severity of the injury and from the victim's testimony, that Divine had the requisite specific intent. The jury could also have found, from Partain's testimony, that something of value was taken from him by Divine, a required element of armed robbery.
In State v. Guccione, 694 So.2d 1060 (La.App. 5 Cir.1997), writs denied at 712 So.2d 869 (La.1998), this Court discussed at page 1067 the usage of circumstantial evidence to prove guilt:
"When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that, `assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.' The requirement of La. R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La. 1984).
Was Partain's testimony credible? The jurors believed him and not Divine. It is the traditional and well-established role of fact-finders to determine credibility; appellate courts should not assess credibility or reweigh evidence. See State v. Rosiere, 488 So.2d 965 (La.1986), and many other cases with similar holdings.
This assignment of error is devoid of reversible substance. Divine was sufficiently identified as the person who performed an unprovoked attack on Partain and took his money.

ASSIGNMENT NO. 4
Divine contends in this assignment of error that the trial judge erred in reading only a part of R.S. 14:30.1, which defines second degree murder. The trial judge instructed the jury as follows:
"Thus in order to convict the defendant of Attempted Second Degree Murder you must find:
"(1) that the defendant acted with a specific intent to kill and;
"(2) that the defendant did or omitted to do an act for the purpose of and tending toward the commission of the crime of second degree murder."
Appellant argues that the following instruction should have been given:
Second degree murder is the killing of a human being:
"(1) when the offender has a specific intent to kill or to inflict great bodily harm; or
"(2) when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm."
Initially, we note that Divine did not contemporaneously object to the charge. Nevertheless, the charge as read was proper. Second degree murder may be committed (1) when the defendant has specific intent or (2) when the offender is engaged in one of the listed felonies. Divine was convicted under the specific intent segment of the statute, which was the law applicable to this prosecution.
The record indicates that Divine's counsel participated in the drafting of the jury *621 charge and that he reviewed the instructions before they were read.

ASSIGNMENT NO. 5
Divine was charged with and convicted of (1) attempted second degree murder and (2) armed robbery. Testimony and evidence established proof, beyond a reasonable doubt, that he had the specific intent to kill or inflict great bodily harm. He was not convicted of attempted second degree murder while engaged in armed robbery, one of the felonies listed in the second degree murder statute. There was no double jeopardy. Had Divine been convicted under both the felony-murder part of the statute and the underlying felony, armed robbery, this assignment of error would be valid.

ASSIGNMENTS 6 AND 7
The trial judge denied Divine's post-trial and pre-sentencing pleadings, including the Motion for a New Trial, the Motion in Arrest of Judgment, the Motion to Quash and the Motion for a Pre-sentence Investigation.
In the Motion for a New Trial, the Motion in Arrest of Judgment and the Motion to Quash, Divine argues that the verdict was contrary to the law and evidence and was not responsive to the indictment, that the jury charge was incorrect, that there was double jeopardy and that there was a misjoinder of offenses. We found no reversible error in the denials of these motions or in the trial judge's decisions not to order a pre-sentence investigation, which is discretionary, or in his imposition of an enhanced sentence because of a previous drug conviction in the State of Tennessee.
Divine has not alleged or suggested any particular information a pre-sentence report might have included that would have influenced or lessened the sentence. LSA-C.Cr.P. art. 875 states that the trial judge may order a pre-sentence report but such a report is not mandatory. See State v. Delaneuville, 545 So.2d 659 (La.App. 5 Cir.1989), writs denied at 551 So.2d 1335 (La.1989).
When Divine was sentenced originally, on November 20, 1997, the trial judge said:
"The Court has reviewed the record in this matter and the sentencing guidelines. The Court finds, Mr. Divine, that, in accordance with the sentencing guidelines, that you used threats and actual violence in the commission of this offense; that the offense was committed to facilitate or conceal the commission of another crime, that is, the attempt murder to the armed robbery.
"The Court finds that the crime resulted in significant permanent injury and significant economic loss to the victim in this matter. The Court further finds that you used a dangerous weapon in the commission of this crime.
"The Court is very concerned that if you were free in the public, that the public would be in danger of further violence from you; that, in fact, the Court feels that members of the public could not be safe anywhere at any time based upon what happened in this particular crime.
"With regard to the crime of attempt second degree murder, the Court hereby sentences you in accordance with the Statute to imprisonment at hard labor in the custody of the Department of Corrections, State of Louisiana for a term of 30 years without benefit of probation, parole, or suspension of sentence.
"With regard to the crime of armed robbery, the Court sentences you to a term of imprisonment of hard labor in the custody of the Department of Corrections of the State of Louisiana for a period of 60 years without benefit of parole, probation, or suspension of sentence.
"Those sentences are to run concurrent. You are hereby remanded to the custody of the Department of Corrections to serve that sentence.

*622 "You're given credit for time served."
At the multiple offender hearing, held on March 5th and May 28th, 1998, the state filed into evidence documents showing that Divine had pled guilty to one count of possession of a scheduled narcotic, diazepam, with the intent to deliver, a felony in Tennessee which would also have been a felony in Louisiana, and one count of possession of marijuana. Divine's attorney neither objected to the introduction of these documents nor argued that the diazepam charge would not have been a felony in this state. The trial judge then imposed the enhanced sentence of 99 years for armed robbery.
We cannot say that either the original or enhanced sentences constituted an abuse of sentencing discretion.

ASSIGNMENT NO. 8
In this assignment of error, Divine complains about the prosecuting attorney's reference to Divine's written statement during opening argument. LSA-C.Cr.P. art. 767 states:
"The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant unless the statement has been previously ruled admissible in the case."
Notwithstanding, the state's attorney said:
"Keith Peppertone is a detective for Kenner. He gets involved in the case, he does what's called a follow-up on it. He doesn't do the initial investigation. He takes over for the scene police officers. He goes over to the central lockup, has the defendant brought up to him. At that point, he asked the defendant if he wants to give a statement. The defendant says he does. He informs him of his rights. He had already been informed of his rights by the police officers on the scene. He said he understood them and waived them. I'll show you the waiver of rights form. At that point, the defendant proceeds to say that he went into the men's room and was trying to go to the bathroom, and at this point some guy attacks him for some unknown reason, takes his head and rams it up against the wall a few times, and then proceeds to reach down into whatever kind of bag he said he had at that point, a fanny pack, or something like that, and tries to take his money that he has exposed. He says that during this argument, he's able to get a knife out and stab the guy in self-defense, and then he runs out of there.
"But what I'll ask you is to do is compare that statement to the evidence that you hear today, the evidence that you hear from the witnesses."
Divine's counsel did not object to the mention of Divine's statement and there was no objection later when the statement was put in evidence during Detective Peppertone's testimony.
Because there was no objection, the trial judge did not have the opportunity to admonish the jury. Further, the statement given to Detective Peppertone spelled out Divine's defense and was not prejudicial; in fact, it was the only evidence the jury heard contradicting Partain's testimony about what actually occurred in the restroom.
In any event, failure to object to the state's opening statement precludes appellate review. See State v. Sepcich, 473 So.2d 380 (La.App. 5 Cir.1985); also, LSA-C.Cr.P. art 841, which reads, in pertinent part:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."

*623 ASSIGNMENT NO. 9
Kenner policeman George Moorehouse was among those who followed Divine after he ran from the casino. Officer Moorehouse was there when Divine was pulled from the water and read his constitutional rights. Officer Moorehouse testified that Divine "... wouldn't say anything. He just kept quiet and kept his head down and didn't want to say anything."
This, Divine contends, violated Fifth Amendment rights and was impermissible. The only purpose of Officer Moorehouse's referral to his silence, Divine argues, was to imply that if he had an exculpatory reason for slabbing Partain, he (Divine) would have then told police officers his version of the restroom incident.
Divine's counsel did not object, thereby depriving the trial judge of the chance to take whatever corrective action may have been appropriate.
In State v. George, 661 So.2d 975 (La. 1995), the Louisiana Supreme Court discussed the denial of the defendant's motion for mistrial following testimony of his post-arrest silence. Not every reference to post-arrest silence requires reversal, the Supreme Court stated. The state's contention in George was that that line of questioning was an attempt to summarize the extent of the investigation and was not designed to exploit the defendant's failure to claim his innocence upon arrest. After the mistrial motion was denied, defense counsel asked for an admonition; the trial judge then advised jurors to draw no adverse inferences from the defendant's postarrest silence.
We find no reversible error in this assignment of error, noting (1) no objection was made by Divine's attorney, (2) the trial judge did not have the opportunity to admonish the jury, (3) there is no indication of prosecutorial misconduct and (4) the error, if any, appears to be harmless in view of other evidence and testimony.

ASSIGNMENT NO. 10
Divine says it was inflammatory and prejudicial for the prosecuting attorney in his closing rebuttal argument to call the defendant "the meanest, the scariest, the most Charles Mansonlooking guy in the place." Divine's trial counsel did not object either during or after the state attorney's closing rebuttal argument.
In State v. Francis, 665 So.2d 596 (La.App. 5 Cir.1995), this Court said at page 603:
"The issue as to the propriety of remarks made in closing argument is not preserved for review where defense counsel makes no objection to the statement either during argument or after the argument. LSA-C.Cr.P. art. 841; State v. Burge, 515 So.2d 494 (La.App. 1 Cir.1987); writ denied, 532 So.2d 112 (La.1988). This lack of a contemporaneous objection by the defendant prevented the trial court from immediately remedying the situation, had corrective action been required. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, writ denied, 94-0488 (La.2/3/95), 649 So.2d 400. In addition, there was no request for an admonition or a mistrial. Absent such an objection, defendant can be deemed to have waived any such error, and is now precluded from raising these issues on appeal. State v. Spencer, supra; State v. Burge, supra. We are aware that, despite the lack of an objection, extremely prejudicial and inflammatory remarks require reversal. State v. Hayes, 364 So.2d 923 (La.1978). However, after reviewing the closing argument of the prosecutor, we do not find any of the remarks so inflammatory or prejudicial as to require reversal."
We do not find this one reference to Charles Manson "so inflammatory or prejudicial as to require reversal," particularly in view of the trial judge's telling the jurors, both in preliminary instructions and in his final charge, that words of lawyers *624 are not evidence and should not be considered as evidence.

ASSIGNMENT NO. 11
Here, Divine argues that it was reversible error for Detective Peppertone to say this about John Horton, the defendant's father:
"We had a gentleman come into the lockup, and he identified himself as the defendant's father. I was never able to talk to him because he had already spoken to an attorney and he declined to be interviewed ..."
Again, as mentioned in the prior discussion of Divine's other assignment of errors, there was no defense objection.
Further, John Horton was never accused of any crime. He was, according to police, a possible witness with possible information about a crime. He has no constitutional right to remain silent.
When John Horton testified as the sole defense witness, he was not asked any questions, either on direct or cross-examination, that he could or would not answer. He denied going to the police station, saying that another son, not the defendant, had gone there.

DECREE
Divine's convictions and sentences are affirmed. We remand only for Art. 930.8 notice to be sent.
AFFIRMED; REMANDED ONLY FOR ART. 930.8 NOTICE TO BE SENT.
NOTES
[1] Although trial judge said September, the entry reflects that the trial was set for August 11th, 1997.